**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Monette Farms Ltd., *et al.*,[1]<br><br>Debtors in a Foreign Proceeding. | Chapter 15<br><br>Case No. 26-10547-LSS<br><br>(Joint Administration Requested) |

**VERIFIED PETITION FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDINGS, (II) RECOGNITION OF FOREIGN REPRESENTATIVE, AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

FTI Consulting Canada Inc. ("FTI"), in its capacity as the authorized foreign representative (the "Foreign Representative") of the above-captioned debtors (collectively, the "Debtors"), which are subject of the proceedings (the "Canadian Proceedings") currently pending before the Court of King's Bench of Alberta (the "Canadian Court"), initiated pursuant to Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (as amended, the "CCAA"), filed chapter 15 petitions for each of the Debtors as of the date hereof (the "Petition Date") under sections 1504 and 1515 of chapter 15 of title 11 of the United States Code (the "Bankruptcy Code"), commencing these chapter 15 cases (the "Chapter 15 Cases") (the chapter 15 petitions, together with this Verified Petition, the "Chapter 15 Petitions") seeking entry of an order, in substantially the form attached hereto as **Exhibit A** (the "Recognition Order"), (i) recognizing the Canadian Proceedings

[1] The Debtors in these Chapter 15 cases, along with the last four digits of each Debtor's U.S. Federal Employer Identification Number ("FEIN") or Canada Revenue Agency Business Number ("BN"), are: Monette Farms Ltd. (BN 0221); Monette Land Corp. (BN 9609); DMO Holdings Ltd. (BN 3689); Goat's Peak Winery Ltd (BN 0281); Monette Farms BC Ltd. (BN 3314); Monette Farms Ontario Corp. (BN 3538); NexGen Seeds Ltd. (BN 3684); Monette Produce Ltd. (BN 0959); Monette Seeds Ltd. (BN 5307); Monette Farms Land GP Ltd. (BN 9220); Monette Farms Land II GP Ltd. (BN 2423); Monette Farms BC GP Ltd. (BN 0958), DMO Holdings USA, Inc. (FEIN 7641); 1012595 DE Inc. (FEIN 4459); Monette Seeds USA LLC (FEIN 7430); Monette Farms Arizona, LLC (FEIN 4502); Monette Farms USA, Inc. (FEIN 2442); Monette Produce, LLC (FEIN 9419). The Debtors' executive headquarters are located at: 280023 Range Road 14, Rocky View County, AB T4B 4L9, Canada. The Foreign Representative's service address for purposes of these Chapter 15 Cases is 520 5th Ave SW, Suite 1610, Calgary, AB T2P 3R7, Canada.

with respect to each of the Debtors as a "foreign main proceeding" pursuant to section 1517 of the Bankruptcy Code; (ii) recognizing FTI as the "foreign representative," as defined in section 101(24) of the Bankruptcy Code, in respect of the Canadian Proceedings; (iii) giving full force and effect in the United States to any and all orders that have been or will be made or entered in the Canadian Proceedings, including without limitation the Initial Order (as defined below) and any forthcoming amended and restated initial order and final orders approving the restructuring transaction to be effected through the CCAA (collectively, the "Canadian Orders"), including any extensions or amendments thereof authorized by the Canadian Court; (iv) applying sections 362, 363, 364(e), and 365(e) of the Bankruptcy Code in these Chapter 15 Cases pursuant to sections 105(a), 1507, and 1521 of the Bankruptcy Code; and (v) granting such other and further relief as this Court deems just and proper.

Contemporaneously herewith, and in support of the Chapter 15 Petitions, the Foreign Representative files (a) the *Declaration of Deryck Helkaa in Support of (I) Debtors' Verified Petition for (A) Recognition of Foreign Main Proceedings, (B) Recognition of Foreign Representative, and (C) Related Relief Under Chapter 15 of The Bankruptcy Code and (II) Foreign Representative's Motion for Provisional Relief* (the "Helkaa Declaration"), and (b) the *Declaration of Jeffrey Oliver as Canadian Counsel to the Debtors in Support of the Debtors' Chapter 15 Petitions and Requests for Certain Related Relief Pursuant to Chapter 15 of the Bankruptcy Code* (the "Oliver Declaration"). In further support of this Verified Petition and request for related relief, the Foreign Representative represents as follows:

## RELIEF REQUESTED

1. The Foreign Representative has commenced these Chapter 15 Cases as ancillary proceedings to the Canadian Proceedings and respectfully files this Verified Petition

contemporaneously with the required accompanying documentation pursuant to section 1504 and 1515 of title 11 of the Bankruptcy Code.

2. The Foreign Representative requests that this Court enter an order, substantially in the form of the Proposed Order attached hereto as **Exhibit A**, pursuant to sections 105(a), 362–65, 1504, 1507, 1509–10, 1515, 1517, 1520–21 of the Bankruptcy Code (collectively, the "Relief Requested") that:

a. recognizes the Canadian Proceedings as foreign main proceedings pursuant to section 1517(b)(1) of the Bankruptcy Code, or in the alternative as foreign nonmain proceedings pursuant to section 1517(b)(2) of the Bankruptcy Code;

b. recognizes FTI Consulting Canada Inc. as the "foreign representative" as defined in section 101(24) of the Bankruptcy Code in respect of the Canadian Proceedings;

c. gives full force and effect in the United States to the Initial Order (as defined below) and, upon entry thereof by the Canadian Court, the Amended and Restated Initial Order (as defined below), including any and all extensions or amendments thereof authorized by the Canadian Court and extending the protections thereof to the Debtors on a final basis;

d. grants the Group (as defined below) and the Debtors' directors and officers all of the relief afforded pursuant to section 1520 of the Bankruptcy Code, including but not limited to the "automatic stay" under section 362 of the Bankruptcy Code, which shall apply with respect to the Group and the Group's property that is now or in the future located within the territorial jurisdiction of the United States;

e. grants such additional relief requested herein and as otherwise authorized by sections 1507 and 1521 of the Bankruptcy Code, as applicable, as the Court deems necessary, including extending on a final basis (pursuant to section 1521(a)(6) of the Bankruptcy Code) the relief granted under the Provisional Relief Order (as defined below) and;[2]

f. provides such other and further relief as the Court deems just and proper.

---

[2] The Foreign Representative anticipates that, following the Comeback Hearing (as defined herein) currently scheduled for May 1, 2026, the Canadian Court will enter an amended and restated Initial Order on or around May 1, 2026.

## **JURISDICTION AND VENUE**

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.

4. Recognition of a foreign proceeding and other matters under chapter 15 of the Bankruptcy Code have been designated core matters under 28 U.S.C. § 157(b)(2)(P).

5. These Chapter 15 Cases have been properly commenced pursuant to Sections 1504 and 1509 of the Bankruptcy Code by the filing of petitions for recognition of the Canadian Proceedings under Section 1515 of the Bankruptcy Code.

6. The Foreign Representative, solely in its capacity as such, confirms its consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of final orders or judgments by the Court to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

7. Venue is proper pursuant to 28 U.S.C. §§ 1410(1) and (3) because one of the Debtors is a Delaware entity, the principal assets of the Debtors in the United States are the undrawn retainer held by the Foreign Representative's counsel in a Delaware client trust account, and certain Debtors have intangible assets that are deemed located in Delaware. Venue in this District is also consistent with the interests of justice and convenience of the parties, having regard for the relief sought by the Foreign Representative.[3]

[3] At least one court in this District has held that section 109(a) of the Bankruptcy Code does not apply to chapter 15 cases. See *In re Bemarmara Consulting A.S.*, Case No. 13-13037 (KG) (Bankr. D. Del. Dec. 17, 2013); *contra In re Barnet*, 737 F.3d 238, 247 (2d Cir. 2013). Even if section 109(a) applies, however, it is satisfied here: courts have consistently held that property as minimal as an undrawn retainer paid to local counsel is sufficient to establish a

8. The statutory predicates for the relief requested in this Verified Petition are sections 101(23)–(24), 105(a), 306, 1502, 1504, 1507, 1509, 1510, 1512, 1515, 1516, 1517, 1520, 1521, 1522, and 1524 of the Bankruptcy Code.

**BACKGROUND**

9. On April 17, 2026, the Debtors commenced proceedings under the CCAA to initiate restructuring proceedings under the supervision of the Canadian Court. On April 21, 2026, the Canadian Court entered an initial order (the "Initial Order") appointing FTI as monitor of the Debtors (in such capacity, the "Monitor") and, in its capacity as Monitor, authorizing FTI to act as Foreign Representative of the Debtors in respect of the Canadian Proceedings. *See* Initial Order ¶ 26. In addition, the Initial Order also imposed an initial stay until and including May 1, 2026, of (1) any proceeding or enforcement process against the Debtors, non-Debtors Monette Farms Land I LP, Monette Farms Land II LP, and Monette Farms BC LP (together, the "Non-Debtor Stay Parties" and together with the Debtors, the "Group"), and the Monitor, and (2) subject to certain exceptions, any proceedings against any of the former, current or future directors or officers of the Debtors with respect to any claim in respect of the Debtors.

10. On the Petition Date, the Foreign Representative filed petitions under chapter 15 of the Bankruptcy Code for recognition of the Canadian Proceedings, thereby commencing the Debtors' chapter 15 cases.

11. Also on the Petition Date, the Foreign Representative filed that certain *Foreign Representative's Motion for Provisional Relief* (the "Provisional Relief Motion") seeking entry of

property interest in the United States for purposes of section 109(a). See *In re Glob. Ocean Carriers Ltd.*, 251 B.R. 31, 38–39 (Bankr. D. Del. 2000). The Debtors' counsel holds such an undrawn retainer, which independently satisfies the section 109(a) requirement for each Debtor.

an order (the "Provisional Relief Order") granting the relief requested in the Provisional Relief Motion shortly after the commencement of these chapter 15 cases.

12. The Foreign Representative anticipates that the Canadian Court will enter an amended and restated Initial Order (the "Amended and Restated Initial Order") on or around May 1, 2026, in connection with the comeback hearing (the "Comeback Hearing") currently scheduled for that date in the Canadian Proceedings.

13. Additional information about the Debtors' business and operations, the events leading up to the filing of the Petition for Recognition, and the facts and circumstances surrounding the Canadian Proceedings and these Chapter 15 Cases are set forth in the Helkaa Declaration and the Oliver Declaration, which are incorporated herein by reference.

## BASIS FOR RELIEF REQUESTED

14. Chapter 15 of the Bankruptcy Code is designed to promote cooperation and comity between courts in the United States and foreign courts, to protect and maximize the value of a debtor's assets and to facilitate the rehabilitation and reorganization of businesses. The relief afforded to a foreign debtor under chapter 15 is intended to avoid disruptions that could otherwise derail a debtor's restructuring in its home country.

15. Consistent with these principles, the Foreign Representative commenced ancillary proceedings for the Debtors under chapter 15 of the Bankruptcy Code to obtain recognition of the Canadian Proceedings, and certain related relief. The Foreign Representative believes that these Chapter 15 Cases will complement the Debtors' primary proceedings in Canada to ensure the effective and economic administration of the Debtors' restructuring efforts and prevent adverse actions in the United States. Further, the Foreign Representative submits that recognition of the

Canadian Proceedings and the related relief requested herein will not undermine the rights that United States creditors typically would enjoy in a chapter 11 proceeding.

16. Further, the Foreign Representative submits that recognition of the CCAA Proceeding will not undermine the rights of U.S. creditors. All creditors of the Debtors, including any in the United States, will have the opportunity to assert their claims or rights in the CCAA Proceeding and are sufficiently protected as they are expected to receive substantially similar treatment under the Canadian Proceedings as they would in bankruptcy proceedings in the United States. The Chapter 15 Cases will also provide U.S. creditors notice and time to assert their rights in the Canadian Proceedings.

## A. Recognition of the CCAA Proceeding as a Foreign Main Proceeding and FTI as Its Foreign Representative Is Appropriate

17. Section 1517(a) of the Bankruptcy Code provides that, after notice and hearing, a court shall enter the Order recognizing a foreign proceeding as a foreign main proceeding if (a) such foreign proceeding is a foreign main proceeding within the meaning of sections 1502(4) and 1517(b)(1) of the Bankruptcy Code, (b) the foreign representative applying for recognition is a person or body, and (c) the petition meets the requirements of section 1515 of the Bankruptcy Code. *See* 11 U.S.C. § 1517. As explained below, the Canadian Proceedings, the Foreign Representative, and the Verified Petition satisfy all of the foregoing requirements.

### *(i) The Canadian Proceeding is a Foreign Main Proceeding or in the Alternative a Foreign Nonmain Proceeding*

18. The Canadian Proceedings constitute foreign main proceedings and, as such, satisfy the first condition for the entry of an order recognizing such proceedings under section 1517(a) of the Bankruptcy Code.

(a) *The Canadian Proceedings constitute a "foreign proceeding"*

19. Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as the following: "a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation."

20. Courts have held that a "foreign proceeding" is one:

a. in which "acts and formalities [are] set down in law so that courts, merchants and creditors can know them in advance, and apply them evenly in practice;"

b. that has either a judicial or an administrative character;

c. that is collective in nature, in the sense that the proceeding considers the rights and obligations of all creditors;

d. that is located in a foreign country;

e. that is authorized or conducted under a law related to insolvency or the adjustment of debt, even if the debtor that has commenced such proceedings is not actually insolvent;

f. in which the debtor's assets and affairs are subject to the control or supervision of a foreign court or other authority competent to control or supervise a foreign proceeding; and

g. which proceeding is for the purpose of reorganization or liquidation.

*See In re Ashapura Minechem Ltd.*, 480 B.R. 129, 136 (S.D.N.Y. 2012) (citing *In re Betcorp Ltd.*, 400 B.R. 266, 277 (Bankr. D. Nev. 2009)); *see also In re Oversight and Control Comm'n of Avánzit, S.A.*, 385 B.R. 525, 533 (Bankr. S.D.N.Y. 2008) (discussing factors). As set forth in the Oliver Declaration, the Canadian Proceedings satisfy such requirements and, therefore, qualify as

"foreign proceedings" for purposes of section 101(23) of the Bankruptcy Code. *See generally* Oliver Declaration.

21. First, the Canadian Proceedings are proceedings commenced pursuant to the CCAA, a Canadian law that governs corporate reorganizations and provides for an arrangement of a company's financial obligations. *See* Oliver Declaration ¶¶ 9–11. For purposes of Chapter 15 recognition, "the hallmark of a 'proceeding' is a statutory framework that constrains a company's actions and that regulates the final distribution of a company's assets." *In re Betcorp Ltd.*, 400 B.R. 266, 278 (Bankr. D. Nev. 2009). Because the Canadian Proceedings operate under such statutory framework, they satisfy the first factor of section 101(23) of the Bankruptcy Code.

22. Second, the Canadian Proceedings are judicial in character. A reorganization proceeding is judicial in character whenever a "[c]ourt exercises its supervisory powers." *In re ABC Learning Ctrs. Ltd.*, 445 B.R. 318, 328 (Bankr. D. Del. 2010). Here, pursuant to the Initial Order, the Canadian Court has assumed active supervisory oversight of the Debtors' assets and business, including the appointment of the Monitor as an officer of the Canadian Court, the imposition of a stay of proceedings, the approval of interim DIP financing, and the establishment of charge priorities over the Debtors' property. *See* Initial Order ¶¶ 16–44.

23. Third, the Canadian Proceedings are collective in nature in that all affected creditors are allowed to participate. In *Betcorp*, for instance, the bankruptcy court discussed the contrasts between a true collective proceeding, where such proceeding "considers the rights and obligations of all creditors" and a non-collective proceeding, such as a "receivership remedy instigated at the request, and for the benefit, of a single secured creditor." *See* 400 B.R. at 281. Here, the Debtors have commenced the Canadian Proceedings with the support of their senior lender syndicate and after consultation with various parties in interest. Helkaa Declaration ¶ 14. The Canadian

Proceedings are designed for the benefit of all creditors and will not prohibit any of the Debtors' creditors from participating in the Debtors' restructuring efforts. Oliver Declaration ¶¶ 9, 24. In addition, affected creditors are entitled to appear and be heard before the Canadian Court in the course of the Debtors' court-supervised sale and investment solicitation process. *Id.* at ¶ 24.

24. Fourth, the Canadian Proceedings, including the Canadian Court, are located in a foreign country, namely in Canada in the Province of Alberta. Helkaa Declaration ¶ 2.

25. Fifth, as described above, the CCAA, which governs the Canadian Proceedings, relates to the adjustment of debt. Oliver Declaration ¶ 9–10. Here, the Debtors intend to utilize the CCAA and Canadian Proceedings to implement a court-supervised sale and investment solicitation process ("SISP"), maximize the value of their assets for the benefit of creditors, and facilitate an orderly deleveraging of their balance sheet. Helkaa Declaration ¶ 54.

26. Sixth, the Canadian Proceedings subject the Debtors' assets and affairs to the supervision of the Canadian Court during the pendency of the proceedings. Oliver Declaration ¶ 10. The Initial Order grants the Monitor broad oversight powers, including the authority to monitor the Debtors' receipts and disbursements, report to the Canadian Court, and assist the Debtors in their restructuring efforts. *See* Initial Order ¶ 27.

27. Finally, the objective of the Canadian Proceedings is to evaluate, implement, and pursue, as appropriate, an orderly sale and investment solicitation process under the supervision of the Canadian Court for the benefit of creditors. Oliver Declaration ¶ 24. Any potential plan of compromise or arrangement (the "Plan") would allow the Debtors to improve their balance sheet and, among other things, would permit the Debtors to renegotiate or disclaim unfavorable contracts. *Id.* The Debtors also intend to evaluate and pursue, as appropriate, the sale of assets under court supervision for the benefit of creditors. Therefore, the Foreign Representative submits

that the Debtors have commenced the Canadian Proceedings for the purpose of reorganization, as required by section 101(23) of the Bankruptcy Code.

28. Since the Canadian Proceedings satisfy all of the criteria required by section 101(23) of the Bankruptcy Code, they are foreign proceedings. United States courts have recognized Canadian Proceedings as "foreign proceedings" on numerous occasions. *See, e.g., In re Hematite Holdings*, No. 20-12387 (MFW) (Bankr. D. Del. Oct. 15, 2020) [Docket No. 35]; *In re Duvaltex Inc.*, No. 23-12072 (JKS) (Bankr. D. Del. Jan. 17, 2024) [Docket No. 36].

(b) *The Canadian Proceedings are a "foreign proceeding"*

29. The Canadian Proceedings should be recognized as "foreign main proceedings" as defined in section 1502(4) of the Bankruptcy Code. A foreign proceeding must be recognized as a "foreign main proceeding" if it is pending in the country where the debtor has its center of main interests. 11 U.S.C. § 1517(b). The term "center of main interests" ("COMI") is not defined in the Bankruptcy Code. The Second Circuit has held that "a debtor's COMI should be determined based on its activities at or around the time the Chapter 15 petition is filed." *In re Fairfield Sentry Ltd.*, 714 F.3d 127, 137 (2d Cir. 2013). Consistent with the European Union Regulation on Insolvency Proceedings from which the COMI concept is drawn, the inquiry focuses on "the place where the debtor conducts the administration of his interests on a regular basis and is therefore ascertainable by third parties." Council Regulation (EC) No 1346/2000 of 29 May 2000, Preamble ¶ 13, quoted in *Fairfield Sentry*, 714 F.3d at 136. This focus on regularity and ascertainability "underscores the importance of factors that indicate regularity and ascertainability." Fairfield Sentry, 714 F.3d at 138.

30. Among the factors that courts may consider are "the location of the debtor's headquarters; the location of those who actually manage the debtor (which, conceivably could be

the headquarters of a holding company); the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes." *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006), quoted in *Fairfield Sentry*, 714 F.3d at 137–38. In addition, although Congress's choice to use "center of main interests" rather than "principal place of business" means the latter concept does not control, "a court may certainly consider a debtor's 'nerve center,' . . . including from where the debtor's activities are directed and controlled, in determining a debtor's COMI." *Fairfield Sentry*, 714 F.3d at 138 n.10. Finally, section 1516(c) provides a rebuttable presumption: "Chapter 15 creates a rebuttable presumption that the country where a debtor has its registered office will be its COMI." Id. at 137; *see also* 11 U.S.C. § 1516(c).

31. Here, applying those standards, Canada is the COMI for each of the Debtors. The Group's executive headquarters is located in Alberta, Canada. Helkaa Declaration ¶ 16. The Group is operated on a fully centralized and integrated basis: all strategic, financial, and operational decisions for every Debtor (Canadian and U.S. alike) are made from Canada by Darrel Monette, the Group's CEO and directing mind, who is resident in Alberta. *See Id.* ¶ 66. This centralized command structure, including the location of the Group's headquarters, its nerve center, its principal banking relationships, and its governing debt agreements, has been and remains ascertainable by third parties, and in particular by creditors, at all times. *See Id.* ¶ 58. The Senior Facilities Agreement dated December 5, 2018 (as amended and restated from time to time) among Monette Farms Ltd., Monette Farms USA, Inc. and Darrel Monette as borrowers, each of the Debtors as guarantors, and a syndicate of lenders (the "Syndicate") is expressly governed by Alberta law (the "Senior Facilities Agreement"). *See Id.* ¶ 66.

32. For the Canadian Debtors (as defined below), the section 1516(c) presumption that their COMI is in Canada—as their place of registration—is unrebutted by evidence to the contrary. For the Remaining Debtors (as defined below), notwithstanding section 1516(c)'s presumption that their COMI is in the U.S.—as they are incorporated there—that presumption *is* rebutted by the evidence: the nerve center of each Remaining Debtor, the place from which its activities are directed, controlled, and coordinated, and the place that has been ascertainable to creditors as the locus of enterprise-wide decision-making, is Canada. *Id.* The analysis for each group is set out in turn below.

33. **Canadian Debtors.**[4] The Canadian Debtors each has its registered office in Canada. *Id.* Pursuant to section 1516(c), the presumption is that each Canadian Debtor's COMI is therefore Canada. The presumption is not rebutted by evidence. The specific facts set out in the Helkaa Declaration further confirm and reinforce such presumption:

a. Darrel Monette, who is resident in the City of Airdrie, in the Province of Alberta, is the sole director and officer of virtually all Canadian Debtors, and is the directing mind, CEO, and ultimate beneficial shareholder (directly or through the Monette Farms Family Trust) of the entire Group. As the directing mind, Darrel Monette makes all strategic, financial, and operational decisions for the Canadian Debtors from Alberta. *Id.* ¶¶ 15, 57.

b. The principal debt agreements governing the Canadian Debtors are centered in Canada. The Senior Facilities Agreement is expressly governed by the laws of the Province of Alberta. All defaults, waivers, and forbearance negotiations in respect of the Senior Facilities Agreement, from the initial events of default in October 2024 through the commencement of the Canadian Proceedings on April 17, 2026, were conducted under Alberta law and managed by Darrel Monette in Alberta together with the agent for the Syndicate, The Bank of Nova Scotia, and its special loans team. *Id.* ¶ 57.

c. The treasury and cash management function for the Group is centered in Canada. Monette Farms Ltd. maintains the Group's primary Canadian-dollar and U.S.-dollar operating accounts and high-interest savings accounts

[4] The "Canadian Debtors" include Monette Farms Ltd., Monette Farms Ontario Corp., NexGen Seeds Ltd., Monette Produce Ltd., Monette Seeds Ltd., Monette Land Corp., DMO Holdings Ltd., Goat's Peak Winery Ltd., Monette Farms BC Ltd., Monette Farms Land GP Ltd., Monette Farms Land II GP Ltd., Monette Farms BC GP Ltd.

at Scotiabank in Canada. These accounts serve as the centralized treasury from which liquidity is distributed to all subsidiaries, including the Remaining Debtors, as required. All foreign exchange conversion between Canadian and U.S. dollars is conducted through the Monette Farms Ltd. accounts. *Id.* ¶ 57.

d. The Group's key professional advisors (FTI Consulting Canada Inc. as Monitor (with its engagement team located in Calgary, Alberta), Cassels Brock & Blackwell LLP as Canadian lead restructuring counsel, and PricewaterhouseCoopers Consulting Canada Inc. as the Syndicate's financial advisor) are all located in Canada. *Id.* ¶ 57.

e. The Canadian Debtors' agricultural operations are managed from Canada. Of the Group's approximately 425 full-time employees (increasing to approximately 600 during peak seeding and growing season), approximately 394 are employed in Canada. *Id.* ¶ 57

f. The senior management team (consisting of the Chief Operating Officer, the Chief Financial Officer, the Chief Human Resources Officer, and the General Counsel) is based in Saskatchewan and British Columbia and regularly convenes in Alberta to make key decisions, with Darrel Monette as the ultimate decision-maker. *Id.* ¶ 57.

**34. Remaining Debtors.**[5] The six Remaining Debtors have their registered offices in the United States. *Id.* ¶ 58. Under section 1516(c), there is a rebuttable presumption that each Remaining Debtor's COMI is in its state of incorporation. That presumption, however, is rebutted by the evidence. Accordingly, the nerve center of each Remaining Debtor is not in the United States but in Canada:

a. Every Remaining Debtor shares the same director and officer: Darrel Monette, resident in Alberta, Canada. No independent U.S.-based management personnel holds any authority over the operations, finances, or strategic direction of any Remaining Debtor. The managers of Monette Seeds USA LLC, Monette Farms Arizona, LLC, and Monette Produce, LLC, and the director and officer of Monette Farms USA, Inc. and DMO Holdings USA, Inc., are each Darrel Monette, resident in Alberta. *Id.* ¶ 58.

b. The corporate ownership structure places all Remaining Debtors under direct or indirect Canadian control. DMO Holdings Ltd., a Saskatchewan corporation wholly owned by Darrel Monette, is the sole parent of DMO Holdings USA, Inc. DMO Holdings USA in turn holds 100% of Monette

[5] The "Remaining Debtors" include DMO Holdings USA, Inc., Monette Seeds USA, LLC, Monette Farms Arizona, LLC, Monette Farms USA, Inc., 1012595 DE Inc., Monette Produce, LLC

Seeds USA, LLC, Monette Farms Arizona, LLC, Monette Farms USA, Inc., and Monette Produce, LLC. DMO Holdings Ltd. also holds the sole Class A common voting share of 1012595 DE Inc., a Delaware corporation. All capital allocation and equity-level decisions for the Remaining Debtors are made by DMO Holdings Ltd. in Saskatchewan. *Id.* ¶¶ 15, 58.

c. The Remaining Debtors are entirely dependent on intercompany financing from Canada. Funding for 1012595 DE Inc., which contributes operating costs and pays a management service fee to Monette Farms USA, Inc. under a joint venture agreement, is provided exclusively through intercompany transfers from DMO Holdings Ltd. in Saskatchewan. The Remaining Debtors' BMO USA accounts (held by DMO Holdings USA, MF Arizona, Monette USA, Seeds USA, Produce USA, and 1012595 DE Inc.) are operationally subordinate to the Monette Farms Ltd. Scotiabank accounts in Canada, which serve as the centralized treasury and foreign exchange conversion point for the entire Group. *Id.* ¶ 58.

d. The Remaining Debtors are bound by the Senior Facilities Agreement governed by Alberta law. Each of the six Remaining Debtors is a guarantor under the Senior Facilities Agreement, under which approximately $829.5 million[6] was outstanding as of April 2026. All material decisions relating to the Senior Facilities Agreement, including decisions concerning compliance, default management, forbearance negotiations, and the ultimate decision to commence these proceedings, were made by Darrel Monette in Alberta. *Id.* ¶¶ 24–28, 58.

e. The Remaining Debtors' primary assets (approximately 54,482 acres of agricultural real property across Big Horn County and other locations in Montana (held by Monette Farms USA, Inc.), approximately 3,134 acres of produce farmland in Aguila, Arizona and a non-operating seed processing facility (held by MF Arizona and Seeds USA), and approximately 4,079 acres of farmland in Genoa, Colorado (held by Monette Farms USA, Inc.)) were acquired, financed, and are managed as an integrated component of the Group's operations directed from Alberta. *Id.* ¶ 58.

f. The Remaining Debtors cannot operate independently without the financial support and management direction of the Canadian Debtors. As set out in the Helkaa Declaration, if the Remaining Debtors were not part of the Canadian Proceedings or the cash management system did not permit intercompany transfers from the Monette Farms Ltd. Scotiabank accounts in Canada, the Remaining Debtors would be unable to continue in business as a going concern and would be forced to cease operations. The Remaining Debtors' operational viability is accordingly not an independent function of their U.S. place of incorporation but is wholly contingent on the continued

[6] Unless otherwise stated, all monetary denominations shall be in lawful currency of Canada.

operation of an integrated enterprise whose direction, financing, and decision-making are centered in Canada. *Id.* ¶ 58.

35. The section 1516(c) presumption of a U.S. COMI is therefore rebutted for each Remaining Debtor, with the evidence "to the contrary" firmly demonstrating that each such Debtor's COMI is in Canada. The nerve center of each Remaining Debtor, the place from which its officers direct, control, and coordinate its activities, is Canada, where Darrel Monette, the sole director and officer of every Remaining Debtor, resides and exercises control. This is particularly evident with respect to the Debtors' principal financial creditors: the Syndicate, which holds approximately $830 million in claims against the Debtors as borrowers or guarantors under the Senior Facilities Agreement, entered into that agreement on terms expressly governed by the laws of the Province of Alberta and agreed that disputes in connection with their debt would be resolved under Canadian law. The Syndicate therefore knew, and by contracting on those terms accepted, that any proceeding to address obligations under the Senior Facilities Agreement would be governed by Canadian law and centered in Canada. Recognition of the Canadian Proceedings as foreign main proceedings is accordingly consistent with the reasonable expectations of the Debtors' most significant creditor constituency, reinforcing the conclusion that Canada is the ascertainable COMI of each Debtor.

36. Based on the foregoing, the Debtors have substantially more ties to Canada than to any other country. The COMI of each of the Debtors is Canada. The Canadian Proceedings, pending before the court in Alberta, are accordingly entitled to recognition as foreign main proceedings under section 1517(b)(1) of the Bankruptcy Code.

(ii) *In the Alternative, the Canadian Proceeding of the Remaining Debtors Should Be Recognized as a Foreign Nonmain Proceeding*

37. In the alternative, this Court should (i) grant recognition of the Canadian Proceedings as a foreign main proceeding with respect to the Canadian Debtors, each of which is

incorporated in Canada and has its nerve center in Canada, and (ii) grant recognition of the Canadian Proceedings as a foreign nonmain proceeding with respect to the Remaining Debtors. Other courts have granted dual recognition to a foreign proceeding as both a main and nonmain proceeding, applying the separate forms of recognition to distinct groups of debtors that are parties to a single foreign proceeding. *See, e.g.*, *In re Mega Brands Inc.*, Case No. 10-10485 (Bankr. D. Del. Mar. 23, 2010) [Docket No. 39].

38. Pursuant to the Bankruptcy Code, a "foreign nonmain proceeding" is a "foreign proceeding" pending in a country where the debtor has an "establishment" within the meaning of section 1502. 11 U.S.C. § 1517(b)(2). "Establishment" is defined in the Bankruptcy Code as "any place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. § 1502(2). Courts have construed "nontransitory economic activity" to require "a local effect on the marketplace" in the jurisdiction where the establishment is said to exist. *See In re Creative Fin. Ltd.*, 543 B.R. 498, 520 (Bankr. S.D.N.Y. 2016). Here, each of the Remaining Debtors carries out nontransitory economic activity in Canada through ongoing channels.

39. Monette Seeds USA LLC directly supports the Group's Canadian grain production operations, which account for over 60% of Group's revenue. A substantial portion of Seeds USA's seed processing capacity is dedicated to processing seed destined for planting on the Group's Canadian farmlands. *See* Helkaa Declaration ¶ 20. That operational activity (procuring, processing, and supplying seed inputs that are consumed in the Canadian agricultural market) has a direct and ongoing effect on Canadian grain production and the Canadian agricultural marketplace. This is a recurring operational contribution to an industry that represents the core of the Canadian Debtors' business and a material segment of the Canadian agricultural economy in

Saskatchewan and Manitoba. *See In re British Am. Ins. Co.*, 425 B.R. 884, 916 (Bankr. S.D. Fla. 2010) (finding establishment where debtor actively sold insurance policies into the local market).

40. Each of the Remaining Debtors is also an active participant in the Group's centralized cash management system, which is headquartered and operated in Canada. The Monette Farms Ltd. Canadian-dollar and U.S.-dollar accounts at Scotiabank in Canada serve as the central treasury from which liquidity is distributed to all Group entities, including the Remaining Debtors, as required. *See* Helkaa Declaration ¶ 23. Funding for 1012595 DE Inc. is provided exclusively through intercompany transfers from DMO Holdings Ltd., a Saskatchewan corporation, in Canada. *See Id.* ¶¶ 23, 58. Each Remaining Debtor's participation in this Canadian-based treasury system—drawing on Canadian banking facilities and transacting through Canadian accounts on an ongoing basis—constitutes nontransitory economic activity carried out in Canada with a direct and continuing local effect on the Canadian capital market.

41. Given the operational, financial, and structural integration of each Remaining Debtor with the Canadian Debtors as described above, each Remaining Debtor has an "establishment" in Canada within the meaning of section 1502(2) of the Bankruptcy Code. Recognition of the Canadian Proceedings as a foreign nonmain proceeding with respect to the Remaining Debtors is therefore warranted in the alternative.[7]

[7] For the avoidance of doubt, each of the Canadian Debtors also independently satisfies the "establishment" requirement under section 1502(2) of the Bankruptcy Code, and therefore the Canadian Debtors' Canadian Proceedings qualify in the alternative as foreign nonmain proceedings. Each Canadian Debtor carries out nontransitory economic activity and has an impact on the local market in Canada through its ongoing agricultural, seed processing, cattle, and produce operations, its participation in the Group's centralized cash management system headquartered in Canada, and its obligations as borrower or guarantor under the Senior Facilities Agreement governed by Alberta law. Helkaa Declaration ¶ 57.

*(iii) The Chapter 15 Cases Have Been Commenced by a Duly Authorized Foreign Representative.*

42. Section 1517 of the Bankruptcy Code provides that a "foreign representative" shall apply for recognition of the foreign proceeding. Section 101(24) of the Bankruptcy Code defines "foreign representative":

> The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding. 11 U.S.C. § 101(24).

43. FTI, in its capacity as Monitor, satisfies the definition of "foreign representative" under section 101(24) of the Bankruptcy Code. FTI is a "person or body" that has been "authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24). Pursuant to the Initial Order, the Canadian Court appointed FTI as the Monitor, and expressly authorized and empowered FTI, in its capacity as Monitor, to act as the Foreign Representative for the purpose of having the Canadian Proceedings recognized in the United States and to apply for foreign recognition and approval of the Canadian Proceedings as necessary. *See* Initial Order ¶ 26. Courts in this District have routinely recognized CCAA monitors as duly authorized foreign representatives in chapter 15 proceedings. *See, e.g.*, *In re Hematite Holdings*, Case No. 20-12387 (Bankr. D. Del. Oct. 15, 2020) [Docket No. 35]; *In re Duvaltex Inc.*, Case No. 23-12072 (Bankr. D. Del. Jan. 17, 2024) [Docket No. 36].

*(iv) The Verified Petition Satisfies the Requirements under Section 1515 of the Bankruptcy Code.*

44. These chapter 15 cases were duly and properly commenced by filing the Verified Petition, accompanied by all fees, documents, and information required by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, including: (a) a corporate ownership statement

containing the information described in Bankruptcy Rule 7007.1; (b) a list containing (i) the names and addresses of all persons or bodies authorized to administer foreign proceedings of the Debtors, (ii) all parties to litigation pending in the United States in which the Debtors are a party at the time of the commencement of the chapter 15 cases, and (iii) all entities against whom provisional relief is being sought under section 1519 of the Bankruptcy Code; (c) a statement identifying all of the Debtors' foreign proceedings that are known to the Foreign Representative; and (d) a certified or authenticated copy of the Initial Order.

45. Because the Verified Petition satisfies section 1517 of the Bankruptcy Code, the Court should recognize the Canadian Proceedings in these chapter 15 cases. Moreover, granting recognition will promote the United States public policy of respecting foreign proceedings as articulated in, *inter alia*, sections 1501(a) and 1508 of the Bankruptcy Code and further cooperation between courts to the maximum extent possible as mandated by section 1525(a) of the Bankruptcy Code. Thus, these circumstances satisfy the conditions for mandatory recognition of the Canadian Proceedings under section 1517 of the Bankruptcy Code.

**B. <u>The Debtor Is Entitled to the Automatic Relief Under 11 U.S.C. § 1520</u>**

46. Section 1520(a) of the Bankruptcy Code sets forth a series of statutory protections that automatically result from the recognition of a foreign proceeding as a foreign main proceeding, *see* 11 U.S.C. § 1520(a), including the application of the automatic stay under section 362(a) of the Bankruptcy Code to the Debtor and to the Debtor's property that is within the territorial jurisdiction of the United States. Given that the protections set forth in section 1520(a) flow automatically from the recognition of a foreign main proceeding under section 1517, the Foreign

Representative respectfully submits that no further showing is required to the extent the Court recognizes the Canadian Proceedings as foreign main proceedings.

47. Alternatively, to the extent Court determines to grant the Canadian Proceedings recognition (i) as foreign main proceedings with respect to the Canadian Debtors and (ii) as foreign nonmain proceedings with respect to the Remaining Debtors, the Remaining Debtors hereby request that the protections afforded by the automatic stay under section 362(a) of the Bankruptcy Code be extended to the Remaining Debtors and their property within the territorial jurisdiction of the United States pursuant to section 1521 of the Bankruptcy Code. Such relief is necessary and appropriate to protect the assets of the Remaining Debtors, which serve critical roles in the Debtors' structure. Further, the Remaining Debtors' creditors would be sufficiently protected within the meaning of section 1522 of the Bankruptcy Code because they can avail themselves of the Canadian Proceeding to assert any and all rights.

### C. <u>The Discretionary Relief Requested Is Necessary and Appropriate to Effect the Restructuring Transactions and Should Be Granted.</u>

48. Upon recognition of a foreign proceeding, section 1521(a) authorizes the Court to grant "any appropriate relief" at the request of the recognized foreign representative "where necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1521(a). Such relief may include, among other things, "granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a)." 11 U.S.C. § 1521(a)(7). The Court may grant relief under section 1521(a) if the interests of "the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a).

49. Section 1521(a)(7) permits a court to grant any relief, with certain limited exceptions that are not applicable here, that would be available to a bankruptcy trustee, and

therefore authorizes the Court apply sections 105, 362, 363, 364(e) and 365(e) of the Bankruptcy Code to the Chapter 15 Cases on a provisional basis and grant provisional recognition to foreign court orders.

50. Sections 105(a) and 1521(a)(7) of the Bankruptcy Code also grant the court authority to extend the protections of sections 362 of the Bankruptcy Code not only to the Debtors, but also to their directors and officers, as non-Debtors, in these Chapter 15 Cases. Indeed, courts in this district have extended and applied the automatic stay to non-debtor entities in chapter 11 cases where the relief is necessary to prevent irreparable harm. *See e.g.*, *In re W.R. Grace & Co.*, 475 B.R. 34, 148 (D. Del. 2012), *aff'd sub nom.*; *In re WR Grace & Co.*, 729 F.3d 332 (3d Cir. 2013), *aff'd*, 532 F. App'x 264 (3d Cir. 2013), *aff'd sub nom.*; *In re WR Grace & Co.*, 729 F.3d 332 (3d Cir. 2013), *aff'd*, 729 F.3d 311 (3d Cir. 2013).

51. For the reasons that follow and as set forth in the Provisional Relief Motion, incorporated herein by reference, the Foreign Representative asks this Court to exercise its discretion under section 1521(a) to extend on a final basis the following additional relief sought in the Provisional Relief Motion, including:

a. recognizing and enforcing in the United States, on a final basis, the Initial Order and, upon its entry by the Canadian Court, the Amended and Restated Initial Order, that, among other things:

i. authorize the Debtors to enter into, perform, and borrow up to \$40,000,000 under the DIP Credit Facility on an interim basis, with the Amended and Restated Initial Order expected to increase the authorized amount to \$90,000,000;

ii. grant the DIP Lenders a charge (the "DIP Charge") against the Debtors' property as security for all obligations under the DIP Credit Facility in an amount of \$95,000,000;

iii. grant the Debtors' directors and officers a charge against the Debtors' property for an aggregate amount of \$1,500,000 (the "Directors' Charge") as security for the Debtors' indemnification

obligations owed to the Debtors' directors and officers in their capacity as such; and

iv. grant the Monitor, the Monitor's legal counsel, the Debtors' legal counsel, and the lender syndicate's financial advisor, a charge against the Debtors' property for an aggregate amount of $1,500,000 (the "Administration Charge," and together with the Directors' Charge and the DIP Charge, the "CCAA Charges") as security for the professional fees and expenses incurred in connection with the Canadian Proceedings and these Chapter 15 Cases;

b. granting, on a final basis, to and for the benefit of the DIP Lenders, certain protections afforded by the Bankruptcy Code, including those protections provided by section 364(e) of the Bankruptcy Code; and

c. applying sections 362 and 365(e) of the Bankruptcy Code in these Chapter 15 Cases on a final basis, pursuant to sections 105(a), 1507, 1519(a), and 1521(a)(7) of the Bankruptcy Code.

52. The Debtors anticipate that the Canadian Court will enter the Amended and Restated Initial Order on or around May 1, 2026, in connection with the Comeback Hearing currently scheduled for that date. Upon entry, the Amended and Restated Initial Order will supersede the Initial Order. The Foreign Representative requests that this Court's final recognition order give full force and effect in the United States to the Amended and Restated Initial Order as entered, including any extensions or amendments thereof authorized by the Canadian Court, to the same extent as the Initial Order.

53. As further explained in the Provisional Relief Motion, the DIP Credit Facility was negotiated and entered into without collusion, in good faith, and at arm's length between the Debtors, the DIP Lenders, and certain members of the existing Syndicate. The Debtors are just weeks away from their critical 2026 growing season and urgently require liquidity to fund upfront expenditures for pre-soil treatment, fertilizer, chemicals, seed, and related crop inputs, which typically exceed $40 million annually and which the Debtors cannot currently fund. Absent access to the DIP Credit Facility, the Debtors would be unable to seed substantial portions of their

farmland within the narrow spring window, resulting in an irreversible loss of revenue for the 2026 crop year, material impairment of realizations from any sale of operating farmland, the risk of widespread layoffs among the Debtors' approximately 425 to 600 employees, and adverse impacts on rural communities across Western Canada and the United States. *See* Helkaa Declaration ¶¶ 57, 61. Critically, the term sheet (the "DIP Term Sheet") conditions the Debtors' ability to obtain advances under the DIP Credit Facility on this Court giving full force and effect in the United States to the Initial Order and, upon its entry, the Amended and Restated Initial Order, including the advances and DIP Charges authorized thereunder. Absent such recognition on a final basis, the DIP Lenders are unwilling to provide funding to the Debtors.

54. Accordingly, the Foreign Representative requests that this Court, pursuant to sections 364(c) and 364(d) of the Bankruptcy Code, grant to the DIP Lenders, on a final basis, valid, binding, enforceable, and perfected liens on all property of the Debtors located within the territorial jurisdiction of the United States (the "U.S. DIP Liens") as security for all obligations under the DIP Credit Facility, which U.S. DIP Liens shall have the same priority, scope, and effect as the DIP Charge granted by the Canadian Court under the Initial Order and the Amended and Restated Initial Order with respect to the Debtors' property located in the United States. The DIP Credit Facility was negotiated in good faith and at arm's-length by all parties involved and, accordingly, any credit extended and loans made to the Debtors under the DIP Credit Facility should be deemed to have been extended in good faith, within the meaning of section 364(e) of the Bankruptcy Code. Furthermore, the proceeds to be provided under the DIP Facility will be extended in good faith, and for valid business purposes and uses, as a consequence of which the

DIP Lenders should be entitled to the protection and benefits of section 364(e) of the Bankruptcy Code in these Chapter 15 Cases.

55. As explained in the Provisional Relief Motion, it is vital to the success of the Debtors' restructuring that actions against the Debtors' directors and officers and their assets within the territorial jurisdiction of the United States be enjoined. Darrel Monette, as the sole director and officer of substantially all Debtors and the directing mind of the entire Group, is indispensable to implementing the SISP and maintaining operational continuity through the 2026 growing season. The Debtors' directors and officers have indemnification rights and have been granted the Directors' Charge against the Debtors' property, such that any judgment against them would be a de facto judgment against the Debtors and their assets to the detriment of creditors.

56. In addition, section 365(e) of the Bankruptcy Code prohibits counterparties from terminating contracts with the debtor solely because of the debtor's bankruptcy filing. The Debtors have entered into over 196 farmland leases across Canada and the United States with aggregate annual rental payments of approximately $29.4 million, as well as equipment lease arrangements with John Deere Financial covering over 1,600 farming units at an annual cost of approximately $17.43 million, and various other critical operational agreements. *See* Helkaa Declaration ¶¶ 12, 40–41. Absent the protections of section 365(e), counterparties, including equipment lessors, farmland landlords, and crop input suppliers, may attempt to terminate these agreements, which would directly impair the Debtors' ability to seed their fields, operate their cattle ranches, and complete the SISP in an orderly manner.

57. Section 1522(a) of the Bankruptcy Code provides that the court may grant relief under section 1521(a) "only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a). Here, the interests of creditors and

other interested entities are more than sufficiently protected within the meaning of section 1522(a) of the Bankruptcy Code, which requires that creditors and other interested entities be "sufficiently protected," but not that they be better off than they would be absent the relief. *See In re Park W. Hotel Corp.*, 64 B.R. 1013, 1019 (Bankr. D. Mass. 1986) ("[C]reditors have no right to be placed in the same economic position as if there had been no bankruptcy filing." quoting *In re Briggs Transp. Co.*, 780 F.2d 1339 (8th Cir. 1985))). The relief requested will largely preserve the status quo and will enable the Debtors to continue to finance their operations for the short time necessary for this Court to rule on the Verified Petition, thereby preserving the value of the Debtors' assets for the benefit of all interested parties. With respect to the U.S. DIP Liens, the Senior Facilities Agent, on behalf of the Syndicate, has consented to the DIP Charge as authorized under the Initial Order and the Amended and Restated Initial Order.

58. Moreover, to provide protection to creditors in the United States, the Provisional Relief Order contains a mechanism that gives parties an opportunity to object to provisional recognition of the Amended and Restated Initial Order. In any event, all creditors benefit from the DIP Credit Facility itself, which provides the Debtors with the liquidity necessary to complete their critical spring seeding operations, preserve going-concern value, and maximize asset realizations for all stakeholders. All creditors, including any in the United States, will have the opportunity to assert their claims and rights in the Canadian Proceedings and are expected to receive treatment under the CCAA substantially similar to what they would receive in proceedings under U.S. law.

59. Further, the purpose of chapter 15 is carried out by granting recognition of and giving full effect to the Initial Order and the Amended and Restated Initial Order, as each will (a) maximize the value of the Debtors' assets by preserving operational continuity through the

2026 growing season, (b) facilitate the fair and efficient cross-border restructuring through the court-supervised SISP, and (c) foster cooperation between the Canadian Court and this Court in the administration of the Debtors' estates across multiple jurisdictions.

**NOTICE**

60. The Foreign Representative will provide notice of the Verified Petition in accordance with the procedures set forth in the *Motion of Foreign Representative for Entry of an Order Scheduling Recognition Hearing and Specifying the Form and Manner of Service of Notice*, filed contemporaneously herewith. In light of the nature of the relief requested, the Foreign Representative requests that this Court find that no further notice is required.

**WHEREFORE**, for the reasons set forth herein, the Foreign Representative respectfully requests that this Court enter an order, substantially in the form attached hereto as **Exhibit A** (i) granting the relief requested herein and (ii) granting the Foreign Representative and the Debtors such other and further relief as the Court deems proper and just.

*[Signature page to follow]*

Dated: April 22, 2026
Wilmington, Delaware

Respectfully submitted,

*/s/ Stephen J. Astringer*

**KOBRE & KIM LLP**
Jacob R. Kirkham (No. 5768)
Stephen J. Astringer (No. 6375)
600 North King Street, Suite 501
Wilmington, Delaware 19801
Telephone: (302) 518-6451
Facsimile: (302) 518-6461
jacob.kirkham@kobrekim.com
stephen.astringer@kobrekim.com

-and-

Daniel J. Saval (*pro hac vice* pending)
John G. Conte (*pro hac vice* pending)
Vincent Yiu (*pro hac vice* pending)
Alaina Heine (*pro hac vice* pending)
800 Third Avenue
New York, New York 10022
Telephone: (212) 488-1259
Facsimile: (212) 488-1220
daniel.saval@kobrekim.com
john.conte@kobrekim.com
vincent.yiu@kobrekim.com
alaina.heine@kobrekim.com

*Counsel to the Foreign Representative*

**VERIFICATION OF PETITION**

I, Deryck Helkaa, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America as follows:

I am the Senior Managing Director of FTI Consulting Canada Inc. ("FTI") and representative of the authorized Foreign Representative for the Debtors. As such, I have full authority to verify the foregoing Verified Petition on behalf of the Debtors.

I have read the foregoing Verified Petition, and I am informed and believe that the factual allegations contained therein are true and accurate to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United State foregoing is true and correct.

Dated: April 22, 2026
Alberta, Canada

Respectfully Submitted,

*/s/ Deryck Helkaa*
By: Deryck Helkaa
Title: Senior Managing Director, FTI
*Foreign Representative of the Debtors*