**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Monette Farms Ltd., *et al.*,[1]<br><br>    Debtors in a Foreign Proceeding. | Chapter 15<br><br>Case No. 26-10547-LSS<br><br>(Joint Administration Requested) |

**FOREIGN REPRESENTATIVE'S MOTION FOR PROVISIONAL RELIEF**

FTI Consulting Canada Inc. ("FTI"), in its capacity as the court-appointed monitor and authorized foreign representative (the "Foreign Representative") for the above-captioned debtors (collectively, the "Debtors"), which are subject of the proceedings (the "Canadian Proceedings") under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (as amended, the "CCAA"), pending before the Court of King's Bench of Alberta (the "Canadian Court"), submits this motion (the "Motion"), by and through its undersigned counsel, to the United States Bankruptcy Court for the District of Delaware (the "Court"), seeking entry of a provisional order pursuant to sections 1519, 1521, and 105(a) of title 11 of the United States Code (the "Bankruptcy Code") granting provisional relief substantially in the form attached hereto as **Exhibit A** (the "Provisional Relief Order"). In support of this Motion, the Foreign Representative relies upon (i) the *Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code*

---

[1] The Debtors in these Chapter 15 cases, along with the last four digits of each Debtor's U.S. Federal Employer Identification Number ("FEIN") or Canada Revenue Agency Business Number ("BN"), are: Monette Farms Ltd. (BN 0221); Monette Land Corp. (BN 9609); DMO Holdings Ltd. (BN 3689); Goat's Peak Winery Ltd (BN 0281); Monette Farms BC Ltd. (BN 3314); Monette Farms Ontario Corp. (BN 3538); NexGen Seeds Ltd. (BN 3684); Monette Produce Ltd. (BN 0959); Monette Seeds Ltd. (BN 5307); Monette Farms Land GP Ltd. (BN 9220); Monette Farms Land II GP Ltd. (BN 2423); Monette Farms BC GP Ltd. (BN 0958), DMO Holdings USA, Inc. (FEIN 7641); 1012595 DE Inc. (FEIN 4459); Monette Seeds USA LLC (FEIN 7430); Monette Farms Arizona, LLC (FEIN 4502); Monette Farms USA, Inc. (FEIN 2442); Monette Produce, LLC (FEIN 9419). The Debtors' executive headquarters are located at: 280023 Range Road 14, Rocky View County, AB T4B 4L9, Canada. The Foreign Representative's service address for purposes of these Chapter 15 Cases is 520 5th Ave SW, Suite 1610, Calgary, AB T2P 3R7, Canada.

(the "Verified Petition"), (ii) the *Declaration of Deryck Helkaa in Support of (I) Debtors' Verified Petition For (A) Recognition of Foreign Main Proceedings, (B) Recognition of Foreign Representative, and (C) Related Relief Under Chapter 15 of the Bankruptcy Code and (II) Foreign Representative's Motion For Provisional Relief* (the "Helkaa Declaration"), and (iii) the *Declaration of Jeffrey Oliver as Canadian Counsel to the Debtors in Support of the Debtors' Chapter 15 Petitions and Requests for Certain Related Relief Pursuant to Chapter 15 of the Bankruptcy Code* (the "Oliver Declaration") and respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Debtors operate one of the largest private farming enterprises in North America with over 400,000 acres of farmland across Canada and the United States.  On the date hereof, the Foreign Representative filed the Verified Petition, seeking, among other things, recognition by this Court of the Canadian Proceedings as "foreign main proceedings" under section 1517 of the Bankruptcy Code, and certain related relief (the "Recognition Order").

2.      Entry of the Provisional Relief Order is a requirement for the Debtors to gain access to essential financing that will allow them to purchase critical supplies and prepare for the growing season that is just days away.  Absent access to immediate liquidity, the Debtors' business operations would be significantly disrupted, risking loss of revenue, declining land value, environmental risks, and widespread layoffs.  In addition, the Foreign Representative seeks provisional relief in order to provide the Debtors with the necessary breathing room and stability to pursue a restructuring in the Canadian Proceedings, including application of sections 362 and 365 of the Bankruptcy Code in the United States.  Although the Debtors have obtained relief from the Canadian Court against potential creditors seeking to, among other things, exercise rights or

2

remedies, without the provisional relief the Debtors may be exposed to potentially adverse actions in the United States by creditors who may disregard orders of the Canadian Court.

3.       Prior to commencing the Canadian Proceedings, the Debtors entered into a term sheet (the "DIP Term Sheet")  with Bank of Nova Scotia, as agent (in such capacity, the "DIP Agent"), and certain members of the Debtors' existing lender syndicate (the "DIP Lenders") for a senior secured super-priority debtor-in-possession revolving credit facility of up to $90,000,000 (the "DIP Credit Facility").[2] The DIP Credit Facility reflected the most viable option available to the Debtors on an executable timeline and on terms capable of supporting both (i) continuation of operations through the seeding season, and (ii) completion of a court supervised sale and investment solicitation process in the Canadian Proceedings.

4.       Upon commencing the Canadian Proceedings, the Canadian Court entered the Initial Order (as defined herein) that implemented a 10-day stay and approved the DIP Credit Facility in an amount of up to $40,000,000.  The Initial Order also granted certain charges, including the Administrative Charge, the DIP Lenders' Charge, and the Directors' Charge (each as defined herein) over the Group's (as defined herein) property.  The Debtors have requested a "Comeback Hearing" to be scheduled for May 1, 2026, where they will seek an amended and restated Initial Order (the "Amended and Restated Initial Order") to, among other things, extend the initial stay and increase the amount available under the DIP Credit Facility to $90,000,000.

5.       Critically, the DIP Term Sheet conditions the Debtors' ability to obtain advances under the DIP Credit Facility on, among other things, this Court's provisional recognition of (i) the Initial Order, and (ii) upon its entry by the Canadian Court, an Amended and Restated Initial Order, including, in each case, giving full force and effect to the Initial Order, the Amended and Restated

---

[2] Unless otherwise stated, all monetary denominations shall be in lawful currency of Canada.

Initial Order (and the borrowings and charges authorized in each) in the United States.  The DIP Lenders are unwilling to provide advances to the Debtors absent this Court provisionally giving full force and effect to the Initial Order and the Amended and Restated Initial Order in the United States pending recognition of the Canadian Proceedings.

6.      Provisional relief is warranted because there is a substantial likelihood that the Canadian Proceedings are recognized under chapter 15 and, absent provisional relief, the Debtors will face irreparable harm.  Moreover, granting provisional relief is consistent with the fundamental objectives of chapter 15, including cooperation between courts of the United States and foreign courts and protecting and maximizing value of the Debtors' assets.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

8.      The Foreign Representative, solely in its capacity as such, confirms its consent to the entry of a final order by the Court to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

9.      Venue is proper pursuant to 28 U.S.C. § 1410.

10.     The statutory predicates for the relief requested herein are sections 105(a), 362, 364–65, 1517, 1519, and 1521 of the Bankruptcy Code and Rule 9013-1(m) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

**BACKGROUND**

**I.        The Canadian Proceedings and the Chapter 15 Cases.**

11.       On April 17, 2026, the Debtors commenced the Canadian Proceedings seeking entry of the initial order (the "Initial Order")[3] granting initial relief to the Debtors.

12.       Among other things, the Initial Order appointed FTI as the court-appointed monitor (the "Monitor") in the CCAA proceedings and authorized and empowered FTI, in its capacity as Monitor, to act as the foreign representative for the purpose of having the Canadian Proceedings recognized under chapter 15 of title 11 of the United States Bankruptcy Code. *See* Oliver Declaration ¶ 26.

13.       The Initial Order also imposed an initial stay until and including May 1, 2026, of (i) any proceeding or enforcement process against the Debtors, non-Debtors Monette Farms Land I LP, Monette Farms Land II LP, and Monette Farms BC LP (together, the "Non-Debtor Stay Parties" and together with the Debtors, the "Group"), and the Monitor, and (ii) subject to certain exceptions, any proceedings against any of the former, current, or future directors or officers of the Debtors with respect to any claim in respect of the Debtors. *Id.* at ¶ 27.

14.       The Initial Order also authorized the Debtors to access $40,000,000 under the DIP Credit Facility and granted the DIP Lenders with a charge (the "DIP Lenders' Charge") over the Group's property in an initial amount up to $95,000,000. The amount available to the Debtors under the Initial Order is limited to only the liquidity required by the Debtors during the initial 10-day stay period. The DIP Lenders' Charge exceeds the amount authorized under the Initial Order because it also reflects the subsequent draw required by the Debtors immediately following the

---

[3] A copy of the Initial Order is attached to the Helkaa Declaration. The summary of the Initial Order set forth herein is for background purposes and is qualified in all respects by the provisions of the Initial Order. To the extent of any inconsistency between the summary set forth herein and the provisions of the Initial Order, the terms of Initial Order shall govern.

Amended and Restated Initial Order.  Helkaa Declaration ¶ 60.  In addition to the DIP Lenders' Charge, the Initial Order granted (i) the Monitor, counsel to the Monitor, the Group's counsel, and the lender syndicate's financial advisor, as security for the professional fees and disbursements incurred both before and after the granting of the Initial Order, a charge (the "Administration Charge") on the Group's property; and (ii) the Debtors' directors and officers a charge (the "Directors' Charge" and together with the Administration Charge and DIP Lenders' Charge, the "CCAA Charges") on the Group's property, as security for an indemnity provided under the Initial Order.  *See* Oliver Declaration ¶ 29.

15.     The Debtors have requested a Comeback Hearing for May 1, 2026, at which time they will seek an Amended and Restated Initial Order that is contemplated to, among other things, increase the Administration Charge and the Directors' Charge amounts, extend the stay entered under the Initial Order, and increase the amount available under the DIP Credit Facility to $90,000,000.  *Id.* at ¶ 31.

16.     On the date hereof (the "Petition Date"), the Foreign Representative commenced these Chapter 15 cases by filing petitions (collectively, the "Chapter 15 Petitions") pursuant to sections 1504 and 1515 of the Bankruptcy Code (collectively, the "Chapter 15 Cases") seeking recognition by this Court of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

17.     Additional factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these Chapter 15 Cases, is set forth in detail in the Helkaa Declaration.  Details regarding the Canadian Proceedings and the CCAA process are set forth in the Oliver Declaration.

**RELIEF REQUESTED**

18.     Pursuant to sections 1519, 1521, and 105(a) of the Bankruptcy Code, the Foreign Representative respectfully requests that the Court enter the Provisional Relief Order, substantially in the form attached hereto as **Exhibit A**, granting the following provisional relief (the "Provisional Relief") pending recognition of the Canadian Proceedings:

(a)     Recognizing and enforcing in the United States on a provisional basis the Initial Order, including, without limitation:

    (i)     staying all proceedings and remedies taken or that might be taken in respect of the Group or any of their property and the Debtors' directors and officers to the same extent provided in the Initial Order;

    (ii)     appointing the Monitor;

    (iii)     authorizing the Debtors to incur interim financing to fund the ongoing expenditures of the Debtors on an interim basis in an amount up to $40,000,000;

    (iv)     granting the CCAA Charges with respect to the Group's property located in the territorial jurisdiction of the United States to the same extent provided in the Initial Order; and

    (v)     authorizing the Debtors' use of their existing cash management system;

(b)     Upon its entry, recognizing the Amended and Restated Initial Order on a provisional basis, including, without limitation

    (i)     staying all proceedings and remedies taken or that might be taken in respect of the Group or any of their property to the same extent provided in the Amended and Restated Order;

    (ii)     authorizing the Debtors to obtain financing up to the amount authorized in the Amended and Restated Order; and

    (iii)     granting the CCAA Charges with respect to the Group's property located in the territorial jurisdiction of the United States to the same extent provided in the Amended and Restated Initial Order;

(c)     Providing the Foreign Representative with the rights and protections to which the Foreign Representative is entitled under chapter 15 of the Bankruptcy Code on a provisional basis, including, but not limited to, the protections limiting the

jurisdiction of United States Courts over the Foreign Representative in accordance with section 1510 of the Bankruptcy Code and the granting of additional relief in accordance with sections 1519(a)(3) and 1521 of the Bankruptcy Code.

(d)     Applying section 362 of the Bankruptcy Code with respect to Group and the Group's directors and officers, and the property of the Group that is within the territorial jurisdiction of the United States.

(e)     Applying section 364 of the Bankruptcy Code applicable with respect to the Debtors and the property of the Debtors that is within the territorial jurisdiction of the United States, including, without limitation:

  (i)     granting liens and security interests in the Debtors' property located within the territorial jurisdiction of the United States in respect of, and in accordance with, the DIP Lenders' Charge to the same extent provided under the Initial Order and, upon its entry, the Amended and Restated Initial Order;

  (ii)    finding that any advances made by the DIP Lenders in accordance with the DIP Term Sheet prior to the entry of the Recognition Order shall be extended in "good faith" as contemplated by section 364(e) of the Bankruptcy Code, such that the validity of DIP Credit Facility, and the priority of the DIP Lenders' Charge in respect of the Debtors' property located within the territorial jurisdiction of the United States, shall not be affected by any reversal, modification, or vacatur of the Provisional Relief Order on appeal or the entry of an order denying the Debtors' request for entry of the Recognition Order.

(f)     For counterparties to certain of the Debtors' executory contracts, application of section 365(e) of the Bankruptcy Code with respect to each of the Debtors and the property of each of the Debtors that is within the territorial jurisdiction of the United States

## BASIS FOR RELIEF REQUESTED

**I.      Section 1519 of the Bankruptcy Code Authorizes the Requested Provisional Relief.**

19.     The Foreign Representative has contemporaneously filed the Verified Petition seeking, among other things, recognition that the Canadian Proceedings are foreign main proceedings under section 1517 of the Bankruptcy Code.  Section 1519 of the Bankruptcy Code permits the Court "[f]rom the time of filing a petition for recognition until [it] rules on the petition"

to grant provisional relief pending recognition of the foreign proceeding where such relief is "urgently needed to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1519(a). Sections 1519(a)(1)–(3) of the Bankruptcy Code define the scope of available provisional relief, which includes:

> (1) staying execution against the debtor's assets;
>
> (2) entrusting the administration or realization of all or part of the debtor's assets located in the United States to the foreign representative . . . in order to protect and preserve the value of assets that, by their nature or because of other circumstances, are perishable, susceptible to devaluation or otherwise in jeopardy; and
>
> (3) any relief referred to in paragraph (3), (4), or (7) of section 1521(a).

11 U.S.C. § 1519(a).

20. Section 1519(a)(3) of the Bankruptcy Code expressly authorizes the Court to grant the Foreign Representative any relief referenced in, among others, section 1521(a)(7) of the Bankruptcy Code. Section 1521(a)(7), in turn, permits a court to grant any relief, with certain limited exceptions that are not applicable here, that would be available to a bankruptcy trustee, and therefore authorizes the Court apply sections 105, 362, 363, 364(e) and 365(e) of the Bankruptcy Code to the Chapter 15 Cases on a provisional basis and grant provisional recognition to foreign court orders.

21. The Provisional Relief requested here is an effective mechanism to implement the chapter 15 policies of promoting cooperation between courts of the United States and courts of foreign countries involved in cross-border restructuring cases. The "fair and efficient administration of cross-border [cases] that protects the interest of all creditors, and other interested entities," including the Debtors, is essential to the "protection and maximization of the value of the [Debtors'] assets." 11 U.S.C. § 1501(a).

22.     Sections 105(a), 1519 and 1521(a)(7) of the Bankruptcy Code also grant the court authority to extend the protections of sections 362 of the Bankruptcy Code not only to the Debtors, but also to their directors and officers and non-Debtors in these Chapter 15 Cases.  Indeed, courts in this district have extended and applied the automatic stay to non-debtor entities in chapter 15 cases where the relief is necessary to prevent irreparable harm.  *In re W.C. Wood Corp., Ltd.*, Case No. 09-11893 (Bankr. D. Del. June 1, 2009) [Docket No. 16] (extending stay protection to officers and directors); *In re Fraser Papers Inc.*, Case No. 09-12123 (Bankr. D. Del. June 19, 2009) [Docket No. 18] (same).

23.     Moreover, courts in this district have extended the automatic stay to a Chapter 15 debtor's directors and officers and non-debtor affiliates on a provisional basis where it would be coextensive with a stay authorized by the foreign court.  *See e.g.*, *In re Pride Group Holdings Inc.*, Case No. 24-10632 (Bankr. D. Del. Apr. 3, 2024) [Docket No. 49] (extending protections of section 362 to entire debtor group, including non-debtor affiliates, and directors and officers on a provisional basis where stay was authorized in CCAA proceedings); *In re Hematite Holdings, Inc.*, Case No. 20-12387 (Bankr. D. Del. Sep. 23, 2020) [Docket No. 10] (extending the protections of section 362 to a debtor's officers and directors on a provisional basis where stay was authorized in CCAA proceedings); *In re Hematite Holdings, Inc.*, Case No. 20-12387 (Bankr. D. Del. Oct. 1, 2020) [Docket No. 26] (same); *In re The Aldo Group Inc.*, Case No. 20-11060 (Bankr. D. Del. May 8, 2020) [Docket No. 29] (same).

I.       **Provisional Relief is Warranted in these Chapter 15 Cases**

24.     Provisional relief under section 1519 requires satisfaction of the standard for injunctive relief.  11 U.S.C. § 1519(e); *In re Innua Can. Ltd.*, Case No. 09-16362, 2009 WL 1025088, at *3 (Bankr. D. N.J. Mar. 25, 2009).  That same standard applies to a request to extend

and apply the automatic stay to a non-debtor entity.  In the Third Circuit, that standard requires a movant to show that: (a) it has a likelihood of success on the merits; (b) it will suffer irreparable harm if the injunction is denied; (c) granting provisional relief will not result in even greater harm to the nonmoving party; and (d) the public interest favors such relief.  *Rogers v. Corbett*, 468 F.3d 188, 192 (3d Cir. 2006) (citing *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).  The Foreign Representative submits that the standard is satisfied in these Chapter 15 Cases.

### A.      There is a Substantial Likelihood of Recognition

25.      As detailed more fully in the Verified Petition and the Helkaa Declaration, there is a substantial likelihood of recognition of the Canadian Proceedings as a foreign main proceeding, or, in the alternative, a foreign nonmain proceeding.

26.      *First*, the Canadian Proceeding is a "foreign proceeding," and the Foreign Representative is a "foreign representative," as those terms are defined in sections 101(23) and (24) the Bankruptcy Code.  *Second*, these Chapter 15 Cases were duly and properly commenced by filing the petitions for recognition in accordance with section 1515 of the Bankruptcy Code and Rule 7007.1 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  *Third*, the Canadian Proceeding is a foreign main proceeding as defined in section 1502 of the Bankruptcy Code because the Debtors' center of main interests is located in Canada for the reasons set forth in the Verified Petition and the Helkaa Declaration.  To the extent this Court determines that the Canadian Proceeding (with respect to the Debtors incorporated outside of Canada) is not recognized as a foreign main proceeding, such CCAA Proceeding is a foreign nonmain proceeding because each Debtor has an "establishment" in Canada within the meaning of Section 1502 of the Bankruptcy Code.

11

**B.** **The Debtors Will Suffer Irreparable Harm Absent Provisional Relief**

  *i.*   *The Debtors will Suffer Immediate and Irreparable Harm Without Access to the DIP Facility*

27.   Provisional recognition and relief in these cases is important to prevent irreparable damage to the interests of the Debtors' estates, creditors, and the efficacy of the Canadian Proceeding. As set forth above, provisional recognition of the Initial Order and the Amended and Restated Initial Order, once entered, is a condition precedent for the Debtors to obtain advances under the DIP Credit Facility. Helkaa Declaration ¶¶ 55, 60. Absent provisional recognition of those orders in the United States, including the advances and DIP Charges authorized thereunder, the DIP Credit Facility does not permit funding to the Debtors. *Id.* at ¶ 55. Without access to the DIP Credit Facility, the Debtors will suffer immediate and irreparable harm.

28.   Indeed, the Debtors are just days away from their critical growing season and urgently need liquidity to purchase critical inputs and continue operations. *Id.* at ¶ 61. In particular, the Debtors' seeding operations require significant upfront expenditures for pre-soil treatment, fertilizer, chemicals, seed, and related inputs, typically exceeding $40 million annually, which the Debtors cannot currently fund. *Id.* at ¶¶ 9, 61. Absent an immediate liquidity injection, the Debtors would be unable to seed substantial portions of their farmland, resulting in an irreversible loss of value for the 2026 crop year and materially impairing realizations from any sale of operating farmland. *Id.* Unlike many other industries, seeding operations cannot be suspended temporarily and later resumed without permanent economic consequences: if land is not seeded within the applicable spring window, the opportunity to generate revenue from that land for the entire year is lost. *Id.* at ¶ 61. Missing the 2026 season would also risk widespread layoffs because farming employment is inseparable from seasonal production activity, loss of

12

licenses that would adversely impact operations, cause environmental risks, and have negative impacts on rural communities. *Id.* at ¶¶ 61–62.

29.     Accordingly, the Foreign Representative requests that the Court, on a provisional basis, recognize the Initial Order and Amended and Restated Initial Orders, including the DIP Charges and other protections approved by the Canadian Court as set forth herein.  The DIP Credit Facility was negotiated in good faith and at arm's-length by all parties involved and, accordingly, any credit extended and loans made to the Debtors under the DIP Credit Facility should be deemed to have been extended in good faith, within the meaning of section 364(e) of the Bankruptcy Code. Furthermore, the proceeds to be provided under the DIP Facility will be extended in good faith, and for valid business purposes and uses, as a consequence of which the DIP Lenders should be entitled to the protection and benefits of section 364(e) of the Bankruptcy Code in these Chapter 15 Cases.

30.     Courts in this district have granted similar relief requested in chapter 15 proceedings. *See, e.g., In re Duvaltex Inc.*, Case No. 23-12072 (Bankr. D. Del. Dec. 21, 2023) [Docket No. 24]; *In re Hematite Holdings, Inc.*, Case No. 20-12387 (Bankr. D. Del. Sept.23, 2020) [Docket No. 10]; *In re Hematite Holdings, Inc.*, Case 20-12387 (Bankr. D. Del. Oct. 1, 2020) [Docket No. 26]; *In re Essar Steel Algoma Inc.*, Case No. 15-12271 (Bankr. D. Del. Nov. 10, 2015) [Docket No. 30]; *In re Arctic Glacier Int'l Inc.*, No. 12-10605 (Bankr. D. Del. Feb. 23, 2012) [Docket No. 28]; *In re Catalyst Paper Corp.*, No. 12-10221 (Bankr. D. Del. Feb. 8, 2012) [Docket No. 60]. Absent immediate interim financing relief, the Debtors and their creditors will suffer immediate and irreparable harm.

> ii.     *The Debtors Will Suffer Immediate and Irreparable Harm Without the Protections of Section 362 and 365(e) of the Bankruptcy Code*

31.     The stay in section 362 of the Bankruptcy Code is one of the fundamental protections provided by bankruptcy law, halting all collection efforts, harassment and foreclosure actions and providing debtors with necessary breathing room from the financial pressures that caused the bankruptcy filing.  Section 365(e) of the Bankruptcy Code provides a debtor with similar relief by prohibiting counterparties from terminating contracts with the debtor solely because of the debtor's bankruptcy filing.

32.     Although the Initial Order implements a stay preventing parties from taking actions against the Debtors and their assets wherever located, the Debtors have assets in the United States that may be subject to enforcement actions by certain creditors that may not believe they are bound by the Initial Order.  *See In re Daebo Int'l Shipping Co., Ltd.*, 543 B.R. 47, 54 (Bankr. S.D.N.Y. 2015) (holding that "the Court finds that under [Canadian] law the stay order plainly was intended to have worldwide effect . . . . [Canadian] law (and the stay order) are clear, and it is consistent with the purpose of Chapter 15 to give effect to them").

33.     If these protections under sections 362 and 365(e) of the Bankruptcy Code were unavailable, the Debtors could face immediate and irreparable harm resulting from the potential termination of critical leases and contracts and the piecemeal loss of assets from individual creditor collection and enforcement efforts.  Helkaa Declaration ¶ 62.  The Debtors thus require the protections of sections 362 and 365(e) of the Bankruptcy Code to ensure operational stability as they implement a sale process in the Canadian Proceeding in order to deleverage their business. *Id.*  Absent immediate protection, creditor enforcement would risk a disorderly liquidation and material value destruction to the Debtors assets that could hinder the sale and investment solicitation process being undertaken in Canada.  *Id.* at ¶¶ 62–63.  Provisional relief will preserve

14

value and protect stakeholders, including the Debtors' employees, by providing the Debtors with sufficient time to implement an orderly and value-maximizing sales process and the liquidity to remain operational for the 2026 seeding season. *Id.* at ¶ 62. Continued operation will ensure continued revenue through the 2026 financial year, maintain asset values, and protect the jobs of its employees. *Id*.

34.     Courts in this district have granted similar relief. *See, e.g., In re The Aldo Group Inc.*, Case No. 20-11060 (Bankr. D. Del. May 8, 2020) [Docket No. 29]; *In re Groupe Dynamite Inc.*, Case No. 20-12085 (Bankr. D. Del. Sept. 9, 2020) [Docket No. 25]; *In re Unique Broadband Sys. Ltd.*, Case No. 19-11321 (Bankr. D. Del. June 13, 2019) [Docket No. 12]; *In re Kraus Carpet Inc.*, Case No. 18-12057 (Bankr. D. Del. Sept. 12, 2018) [Docket No. 17] (granting recognition on a provisional basis); *In re RCR Int'l Inc.*, Case No. 18-10112 (Bankr. D. Del. Jan. 24, 2018) [Docket No. 11] (same); *In re Essar Steel Algoma Inc.*, Case No. 15-12271 (Bankr. D. Del. Nov. 10, 2015) [Docket No. 30] (same).

35.     Moreover, the Debtors will face immediate and irreparable harm if the commencement of actions against the Debtors' directors and officers and non-Debtor Stay Parties are not enjoined. The directors and officers in question are essential to managing the Debtors' business and ability to implement a successful restructuring and have indemnification rights and have been granted a Directors' Charge against the Debtors, such that any judgment against them would be a de facto judgment against the Debtors and their assets—to the determent of creditors. The Canadian Court has also found that the Non-Debtor Stay Parties are integrally related to the Debtors business and granted such parties the same protections as the Debtors.

**C.      Creditors Will Not Be Harmed by the Provisional Relief**

36.      Pursuant to section 1522(a) of the Bankruptcy Code, the Court may grant provisional relief under section 1519 "only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected."  11 U.S.C. § 1522(a).  The Debtors' creditors will not be harmed by the requested provisional relief.

37.      The Provisional Relief will largely preserve the status quo and will enable the Debtors to continue to finance their operations for the short time necessary for the Court to rule on the Verified Petition.  In fact, granting the request for provisional relief will benefit the Debtors' creditors because it will ensure that the value of the Debtors' assets is preserved for the benefit of all interested parties.  Indeed, as stated in the legislative history to section 362 of the Bankruptcy Code:

> The automatic stay also provides creditor protection.  Without it, certain creditors would be able to pursue their own remedies against the debtor's property.  Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors.  Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally.  A race of diligence by creditors for the debtor's assets prevents that.

H.R. Rep. No. 95-595, at 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6297.

Similarly, the legislative history to section 365(e) provides:

> Subsection (e) invalidates ipso factor [sic] or bankruptcy clauses.  These clauses, protected under present law, automatically terminate the contract or lease, or permit the other contracting party to terminate the contract or lease, in the event of bankruptcy.  This frequently hampers rehabilitation efforts.  If the trustee may assume or assign the contract under the limitations imposed by the remainder of the section, then the contract or lease may be utilized to assist in the debtor's rehabilitation or liquidation.

*Id*. at 348, 1978 U.S.C.C.A.N at 6304-05.

38.      Moreover, the Foreign Representative is requesting that the Court recognize, on a provisional basis, the DIP Lenders' Charge and grant the DIP Lenders liens on the Debtors' property located in the United States to the same extent the DIP Lenders' Charge is authorized under the Initial Order and the Amended and Restated Initial Order (once entered).  Importantly, the DIP Lenders are members of the existing lender syndicate under the Senior Facilities Agreement dated December 5, 2018 between the Group and The Bank of Nova Scotia as agent (the "Senior Facilities Agent") for a syndicate of lenders (the "Syndicate"), and has consented to the DIP Lenders' Charge as authorized under the Initial Order and Amended and Restated Initial Order.

39.      Moreover, to provide protection to creditors in the United States, the Proposed Provisional Relief Order contains a mechanism that gives parties an opportunity to object to provisional recognition of the Amended and Restated Initial Order.  Creditors will also be protected by virtue of the significant benefits that the DIP Credit Facility confers on the Debtors, including by providing them with the necessary liquidity to continue their operations during a critical seeding window that will maximize the value of their assets for the benefit of all parties.

40.      For these reasons, the Foreign Representative submits that there will be no harm to creditors if the Foreign Representative's request for provisional relief is granted.

**D.      The Public Interest Favors Granting the Provisional Relief.**

41.      The requested provisional relief is consistent with the policy underlying bankruptcy law and is in the public interest because it will facilitate the Debtors' efforts to pursue and complete a successful restructuring for the benefit of the Debtors' creditors and other stakeholders.  *See In re W.R. Grace & Co.*, 475 B.R. 34, 208 (D. Del. 2012) (emphasizing that "[i]n the bankruptcy context, there is a general public policy weighing in favor of affording finality to bankruptcy

judgments."); *In re Tribune Co.*, 477 B.R. 465, 475 (Bankr. D. Del. 2012) (stating "there is also a strong public interest in the swift and efficient resolution of bankruptcy proceedings"); *Grimes v. Genesis Health Ventures, Inc. (In re Genesis Health Ventures, Inc.)*, 280 B.R. 339, 346 (D. Del. 2002) (explaining "[p]ublic policy weighs in favor of facilitating quick and successful reorganizations of financially troubled companies"); *Rehabworks, Inc. v. Lee (In re Integrated Health Servs., Inc.)*, 281 B.R. 231, 239 (Bankr. D. Del. 2002) (emphasizing "[i]n the context of a bankruptcy case, promoting a successful reorganization is one of the most important public interests") (citations omitted).

42.     In addition, granting the provisional relief is in the public interest because it promotes cooperation between jurisdictions in cross-border insolvencies, an express purpose of chapter 15 of the Bankruptcy Code, and will maximize the value of the Debtors' assets.  Courts in this circuit have frequently granted requests for similar provisional relief in chapter 15 cases.  *See, e.g.*, *In re Essar Steel Algoma Inc.*, Case No. 15-12271 (Bankr. D. Del. Nov. 10, 2015) [Docket No. 30]; *In re Arctic Glacier Int'l, Inc.*, Case No. 12-10605 (Bankr. D. Del. Feb. 23, 2012) [Docket No. 28]; *In re Angiotech Pharm., Inc.*, Case No. 11-10269 (Bankr. D. Del. Jan. 31, 2011) [Docket No. 26] (order granting provisional relief, including protections of automatic stay and 365(e)); *In re MAAX Corp.*, Case No. 08-11443 (Bankr. D. Del. July 15, 2008) [Docket No. 22] (order granting provisional relief, including protections of 365(e)).

### **WAIVER OF BANKRUPTCY RULE 1007(a)(4)(B)**

43.     Contemporaneously with the filing of this Motion, the Foreign Representative filed the Lists Pursuant to Federal Rules of Bankruptcy Procedure 1007(a)(4) and 7007.1 (the "<u>Bankruptcy Disclosures</u>").  Among other things, Bankruptcy Rule 1007(a)(4)(B) requires a list of all entities against whom provisional relief is being sought under section 1519 of the Bankruptcy Code, unless the court orders otherwise.  As set forth in this Motion and as reflected

in the Bankruptcy Disclosures, the Foreign Representative seeks provisional application of the stay similar to that available under section 362 of the Bankruptcy Code that would specifically, but not exclusively, affect those parties.  The relief sought herein could likewise affect other parties to the extent any party might commence litigation or enforce against any of the Group's property located within the United States.  The disclosure provided in the Rule 1007 statement with respect to this Motion is sufficient to satisfy Bankruptcy Rule 1007(a)(4)(B).  However, given that other, unknown parties may be affected, the Foreign Representative also requests that the Court waive any further requirement under Rule 1007(a)(4)(B) with respect to the provisional relief sought by this Motion

## **NOTICE**

44.    The Foreign Representative will provide notice of this Motion consistent with Bankruptcy Rule 2002(q) and Local Rule 9013-1(m).  The Foreign Representative proposes to notify all creditors and parties in interest of the filing of the Verified Petition in the form and manner set forth in the *Motion of Foreign Representative for Order (I) Scheduling Hearing on Verified Petition Under Chapter 15 of The Bankruptcy Code For Recognition of a Foreign Main Proceeding and for Additional Relief and Assistance Under 11 U.S.C. §§ 105(a), 1507, and 1521 and (II) Specifying Form and Manner of Service of Notice of Hearing*, filed contemporaneously herewith.

45.    The Foreign Representative submits that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

19

**WHEREFORE**, the Foreign Representative respectfully requests that this Court enter the Provisional Relief Order, substantially in the form attached hereto as **Exhibit A**, granting the requested relief and such other and further relief as may be just and proper.

Dated: April 22, 2026
      Wilmington, Delaware

Respectfully submitted,

*/s/ Stephen J. Astringer*

**KOBRE & KIM LLP**
Jacob R. Kirkham (No. 5768)
Stephen J. Astringer (No. 6375)
600 North King Street, Suite 501
Wilmington, Delaware 19801
Telephone: (302) 518-6451
Facsimile: (302) 518-6461
jacob.kirkham@kobrekim.com
stephen.astringer@kobrekim.com

-and-

Daniel J. Saval (*pro hac vice* pending)
John G. Conte (*pro hac vice* pending)
Vincent Yiu (*pro hac vice* pending)
Alaina Heine (*pro hac vice* pending)
800 Third Avenue
New York, New York 10022
Telephone: (212) 488-1259
Facsimile: (212) 488-1220
daniel.saval@kobrekim.com
john.conte@kobrekim.com
vincent.yiu@kobrekim.com
alaina.heine@kobrekim.com

*Counsel to the Foreign Representative*